Robinson, J.
The charter having been voted upon and adopted on the same day and at the same election at which the mayor was elected, and by its' express terms not becoming effective until the first day of January, 1918, manifestly the election of the mayor was had, not under the provisions of the charter, but under the provisions of Section 4249, General Code, which reads as follows: “The mayor shall be elected for a term of two years, commencing on the first day of January next after his election, and shall serve until his successor is elected and qualified. He shall be an elector of the corporation.”
This election could not have been under the charter, for until the vote was had upon the adoption of the charter no charter existed, nor was it known that it would be adopted, and had the charter been rejected the mayor’s term would have undoubtedly been for the period of two years, as provided in the statutes, and the election of a successor would *343 have been due at the election to be held November 4, 1919.
That it was the intention of the framers and adopters of the charter, by the provision “The Mayor, President of Council or Vice-Mayor, and Councilmen elected at the election held November 6, 1917, shall hold their respective offices for four years commencing January 1, 1918,” to constitute as officers under the charter the persons elected at the November, 1917, election is not debatable. Was it within the power granted the city by Section 7, Article XVIII of the 'Constitution of Ohio, to so select its officers ? That section reads: “Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.” And Section 3 of the same article reads: “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws.”
Whatever difficulty this court may have encountered in accurately designating the subjects comprehended in “local self-government,” as contra-distinguished from “local police, sanitary and other similar regulations,” it has had no difficulty in arriving at’ the conclusion that the qualification, duties and .manner of selection of officers, .purely municipal, come within the purview of the provision granting a city “local self-government.”
*344 In the case of Fitzgerald et al. v. The City of Cleveland, 88 Ohio St., 338, this court held in the first and second propositions of the syllabus:
“The provisions of Section 7, Article XVIII of the Constitution as amended in September, 1912, authorize any city or village to frame and adopt or amend a charter for its government and it may prescribe therein the form of the government and define the powers and duties of the different departments, provided they do not exceed the powers granted in Section 3, Article XVIII, nor disregard the limitations imposed in that article or other provisions of the constitution.
“Under Sections 3 and 7, Article XVIII, as so amended, municipalities are authorized to determine what officers shall administer their government, which shall be appointed and which elected.”
And in the opinion, at page 344, Johnson, J., used the following language: “It will not be disputed that one of the powers of government is that of determining what officers shall administer the government, which ones shall be appointed and which elected, and the method of their appointment and election. These are essentials which are confronted at the very inception of any undertaking, to prepare the structure or constitution for any government. Obviously such power would be included among ‘all powers of local self-government,’ which any municipality has authority to exercise under Section 3 of Article XVIII as to any officers of such municipality, unless the election of such officers is not a matter of municipal *345 concern, or unless such power has been excepted in some manner from those granted.”
And, again, at page 352, Judge Johnson says:
“We have seen that the method of electing officers is a governmental function or power, and when the officer to be elected is chosen solely for the performance of a municipal duty, it is a municipal affair.”
In State, ex rel. Taylor, v. French et al., 96 Ohio St., 172, this court held: “The Constitution itself having by Article XVIII committed to any municipality the power to frame and adopt a charter for its government and to exercise thereunder all powers of local self-government,-subject to the limitations expressed in that article, a provision in the charter of a municipality, adopted in full compliance with the article referred to, which confers upon women the right to' vote for all municipal elective officers and to be appointed or elected to and hold any municipal office provided for in such charter, is valid.”
This court, then, having held that the manner of selecting purely municipal officers is a subject of “local self-government,” as distinguished from “local police, sanitary and other similar regulations,” the provisions of the charter must supplant the provisions of Section 4249, General Code, for as was declared by this court in the case of State, ex rel. Lentz et al., v. Edwards et al., 90 Ohio St., 305, 310, “That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose *346 of the amendment was to permit such differences and make them effective.”
The election of John Galvin as mayor of the city of Cincinnati under the code was ineffective, after and because, of the adoption of the charter, for all purposes except for the purpose of designation.
In State, ex rel. Lentz et al., v. Edwards et al., supra, the right of certain elected commissioners, empowered by the charter of the city of Dayton to appoint a city manager as the executive head of the city, to administer their office, was called in question, and that right was sustained by this court. If the electors of one city may delegate to a commission the power to appoint an executive head for such city, whether he be called city manager or mayor, we can see no reason why the electors of any other city may not select, elect or appoint an executive head, without the intervention of a commission, by the adoption of a charter designating who shall be the executive head, either by naming him or by reference to an election, even though that election be of itself, because of the adoption of the charter and the supplanting of the state law upon that subject, ineffective for the purpose of inducting the successful candidate into office.
We do not hold that the term of office for which John Galvin was elected mayor of the city of Cincinnati under Section 4249, General Code, was extended by the adoption of the charter by the city, but do hold that by reason of the adoption of the charter said election was ineffective for all purposes except for the purpose of designating the *347 particular individual the electors, by the adoption of the charter, had selected as their executive officer for the four years beginning January 1, 1918, and that John Galvin has held his office thus far by virtue of the charter and not by virtue of the provisions of the General Code. This being so, the term of office of the present mayor will expire December 31, 1921, and under the provisions of the charter no election for mayor is due until that year and the Board of Deputy State Supervisors and Inspectors of Elections for Hamilton county is not authorized to print the name of relator upon the ballot for the election to be held November 4, 1919.

Writ denied.

Nichols, C. J., Jones, Matthias, Johnson, Donahue and Wanamaker, JJ., concur.